UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| AMANDA ENGEN, on behalf of herself and others similarly situated, | : : : : : : : : : : : : : : | Civil File No. 19-2433 |
| Plaintiff, | | |
| v. | | **COMPLAINT – CLASS ACTION** |
| GROCERY DELIVERY E-SERVICES USA INC. DBA HELLO FRESH | | |
| Defendant. | | |

**Preliminary Statement**

1. Plaintiff Amanda Engen brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. The Plaintiff alleges that Grocery Delivery E-Services USA Inc. DBA Hello Fresh ("Hello Fresh") sent automated telemarketing calls to her and other putative class members without their prior express written consent.

3. This Class Action Complaint also relates to Hello Fresh's conduct of making telemarketing calls in the absence of an adequate "do not call" policy or training.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

5. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff Amanda Engen currently resides in Minnesota in this District, as she did at all relevant times during the conduct alleged in the Complaint.

7. Defendant Grocery Delivery E-Services USA INC. DBA Hello Fresh is headquartered in New York.

**Jurisdiction & Venue**

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. The Court has personal jurisdiction over Hello Fresh because it makes telemarketing calls and delivers its product into this District, as it did with Ms. Engen.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls at issue were made into this District.

**TCPA Background**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA prohibits automated telemarketing calls to cellular telephones</u>

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or

prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service ….” *See* 47 U.S.C. § 227(b)(1)(A).

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 ¶ 165 (2003).

16. In 2012, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a

specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd 1830, 1844 (2012) (footnotes omitted).

<u>The TCPA's requirement that entities have sufficient policies in place prior to making telemarketing calls</u>

17.  The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

18.  The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .')" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

19.  Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 7 FCC Rcd 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

20. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

21. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

22. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

23. These regulations prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

24. Accordingly, all telemarketing calls violate the TCPA unless Defendant can demonstrate that it has implemented the required policies and procedures.

The growing problem of automated telemarketing

25. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

26. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

27. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

28. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

29. According to online robocall tracking service "YouMail," 4.8 billion robocalls were placed in August 2019 at a rate of 154.2 million per day. www.robocallindex.com (last visited September 4, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

30. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited August 7, 2019).

### Factual Allegations

Calls to Ms. Engen

31. Plaintiff Engen is a "person" as defined by 47 U.S.C. § 153(39).

32. Ms. Engen's telephone number, (XXX) XXX-6708, is assigned to a cellular telephone service.

33. Ms. Engen signed up for a Hello Fresh trial subscription in or around December 2018.

34. Ms. Engen ended her trial subscription in approximately January 2019.

35. Shortly thereafter, Ms. Engen began receiving calls from Hello Fresh.

36. On two or three occasions, Ms. Engen asked the callers from Hello Fresh to stop calling her.

37. However, in response, the representatives from Hello Fresh simply hung up the phone.

38. Hello Fresh either does not have or does not utilize an internal Do Not Call list, as Ms. Engen continued to receive calls from Hello Fresh after these requests.

Hello Fresh's dialing system is an ATDS

39. These calls were made with an automatic telephone dialing system ("ATDS"), as that term is defined by the TCPA.

40. The calls to Ms. Engen followed a pattern.

41. Before the call was connected to a live individual there was a distinctive "click and pause" sound, which is associated with a predictive dialing system.

42. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once and only transfers the call to a live agent once a human being is on the line.

43. On information and belief, the dialing system used by Hello Fresh also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

44. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

45. On information and belief, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

46. The dialing system can do this by inputting a straightforward computer command.

47. Following that command, the dialing system will sequentially dial numbers.

48. First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

49. This would be done without any human intervention or further effort.

50. On information and belief, the dialing system used by Hello Fresh is driven by software that uses an algorithm that determines when Hello Fresh will make a phone call. The dialer makes this determination automatically and without human intervention. These characteristics, too, are indicative of an ATDS.

51. Hello Fresh does not have a written policy pertaining to "do not call" requests.

52. Ms. Engen requested to no longer receive calls from Hello Fresh, yet she continued to receive calls.

53. As such, to the extent a perfunctory written policy exists, the Defendant has not trained its personnel on the existence or use of any internal "do not call" list.

54. And as the Defendant continued to call Ms. Engen after the requests to cease the calling—or simply hung up on her in response—the Defendant does not record or honor "do not call" requests.

55. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call

recipients because they were frustrating, obnoxious, annoying, a nuisance, and disturbed the solitude of Plaintiff and the class.

## Class Action Allegations

56. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

57. The classes of persons Plaintiff proposes to represent are tentatively defined as:

> **Autodialed Class:** All persons in the United States who, from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) called, (2) using the same or similar dialing equipment used to call Plaintiff (3) on their cellular telephones, and (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff, or (b) Defendant does not claim to have obtained prior express written consent, and (5) who were not a current customer of the Defendant at the time of the call.
>
> **Internal DNC Class**: All persons in the United States who, from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) called (2) with two or more telemarketing calls in a 12-month period and (3) who were not a current customer of the Defendant at the time of the call.

These two are collectively referred to as the "Classes."

58. Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's

agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

59. The Classes as defined above are identifiable through phone records, phone number databases, and business and customer records of Defendant.

60. The potential members of the Classes number at least in the thousands.

61. Individual joinder of these persons is impracticable.

62. The Plaintiff is a member of both Classes.

63. There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

> (a) whether Defendant used an ATDS to make its calls to the members of the Autodialed Class;
>
> (b) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;
>
> (c) whether Defendant maintained a written "do not call" policy;
>
> (d) whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;
>
> (e) whether Defendant recorded or honored "do not call" requests;
>
> (f) whether Defendant's conduct constitutes a violation of the TCPA; and

> (g) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

64. Plaintiff's claims are typical of the claims of members of the Classes.

65. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes, she will fairly and adequately protect the interests of the classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

66. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

67. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

68. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

# FIRST CAUSE OF ACTION

## Telephone Consumer Protection Act
## (Violations of 47 U.S.C. § 227)
## (On Behalf of Plaintiff and the Autodialed Class)

69. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

70. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an autodialer to Plaintiff's and Class members' cellular telephones.

71. The Defendant's violations were negligent, willful, or knowing.

72. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

73. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

## SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal DNC Class)**

74. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

75. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Internal DNC Class Members' telephone numbers.

76. Defendant did so despite not having a written policy pertaining to "do not call" requests.

77. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

78. Defendant did so despite not recording or honoring "do not call" requests.

79. Defendant placed two or more telephone calls to Plaintiff and Internal DNC Class Members in a 12-month period.

80. Plaintiff and Internal DNC Class Members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

81. Plaintiff and Internal DNC Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

F. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls to persons or phone numbers that have requested to not be called.

G.     An award to Plaintiff and the Classes of damages, as allowed by law; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: September 5, 2019

        Respectfully submitted,

        ROBINS KAPLAN LLP

        By:   */s/Michael D. Reif*
           Michael D. Reif (0386979)
           Brenda L. Joly (0386791)
           800 LaSalle Ave., Suite 2800
           Minneapolis, MN 55402
           612-349-8500
           mreif@robinskaplan.com
           bjoly@robinskaplan.com

        TURKE & STRAUSS LLP
        Samuel J. Strauss (*pro hac vice* application forthcoming)
        936 N. 34th Street, Suite 300
        Seattle, WA 98103
        608-237-1775
        Sam@turkestrauss.com

        PARONICH LAW, P.C.
        Anthony I. Paronich (*pro hac vice* application forthcoming)
        350 Lincoln St., Suite 2400
        Hingham, MA 02043
        617-485-0018
        anthony@paronichlaw.com

        *Attorneys for Plaintiff and proposed class*